IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

ROSCOE LEWIS HOLLOWAY
PLAINTIFF

VS

JEFF FULLER, et...al
DEFENDANTS

AMENDED 42 U.S.C. § 1983 CIVIL COMPLAINT OF PLAINTIFF
CASE NUMBER: 3:06-CV-119-WKW

ROSCOE LEWIS HOLLOWAY
PLAINTIFF PRO SE
AIS # 154358 - DORM #8
LCF - 28779 NICK DAVIS ROAD
HARVEST, ALABAMA
          35749 - 7009

This is a 42 U.S.C. § 1983 civil action complaint filed by Roscoe Lewis Holloway, a state prisoner who is currently incarcerated at the Limestone Correctional Facility in Harvest, Alabama, based upon the unconstitutional conditions of the Randolph County Jail during the time the complainant was incarcerated therein and the deliberate indifference of the named Defendants. The Plaintiff seeks monetary damages, injunctive relief and a declatory judgement in this action.

## PARTIES TO THIS ACTION

1. The Plaintiff in this action is Roscoe Lewis Holloway, AIS # 154358 - Dorm # 8 - LCF - 28779 Nick Davis Road - Harvest, Alabama 35749-7009.

2. A Defendant in this action is Jeff Fuller, the Sheriff of Randolph County, Alabama - P.O. Box 347 - Wedowee, Alabama 36278-0347.

3. A Defendant in this action is Shirley Johnson who is the Randolph County Jail Administrator / Chief Jailer - % The Randolph County Jail - General Delivery - Wedowee, Alabama 36278, or, % P.O. Box 347 - Wedowee, Alabama 36278-0347.

4. A Defendant in this action is Randolph County and the Randolph County Commission - P.O. Box 249 - Wedowee, Alabama 36278.

1

## CAPACITY IN WHICH DEFENDANTS ARE SUED

The Plaintiff is suing the Defendants in their personal and individual capacities for money damages.

The Plaintiff is suing the Defendants in their official and individual capacities for a declaratory judgement and Injunctive relief.

## COLOR OF STATE LAW

The Plaintiff alleges that during and at all times relevant to this complaint the Defendants were acting under color of state law.

2

The Plaintiff alleges that at all times relevant to this complaint Defendant Jeff Fuller was the Sheriff of Randolph County, Alabama and in such capacity, by virtue of statute 14-6-1 Ala. Code 1975 the Defendant had the legal custody and charge of the Randolph County Jail and all prisoners committed thereto, including this Plaintiff.

The Plaintiff alleges that Defendant Jeff Fuller was, and has been deliberately indifferent to the health, safety, and wellbeing of the Plaintiff and all other persons committed to the Randolph County Jail and the Defendant violated this Plaintiff's Eighth and Fourteenth Amendment rights when:

The Plaintiff was placed in and confined to the Randolph County Jail on or about July 7th, 2005 and remained incarcerated therein until on or about October 6th, 2005 as a pretrial detainee. From on or about October 6th, 2005, the date the Plaintiff was sentenced to prison as a state prisoner, the Plaintiff remained confined/incarcerated in the Randolph County Jail until on or about January 20th 2006, when he was transferred to the Kilby Prison in Mt. Meigs, Alabama

During the Plaintiff's incarceration in the Randolph County Jail:

The second floor of the jail had only one (1) exhaust fan for the entire second floor on which cells were located containing prisoners. The exhaust fan had a guard on it which had approximately 1 inch by 1 inch holes in it. The guard on the

3

fan was continuously so clogged up with black dust that no one could even see through the guard and the exhaust fan could not provide proper and adequate air circulation.

The Randolph County Jail was severly overcrowded. There were twenty two (22) inmates/prisoners packed into a cellblock designed for six (6) inmates/prisoners. The cellblock had only six (6) toilets, two (2) of which were not in operating condition continuously. This cellblock was identified as D block at the jail, in which this Plaintiff was confined for the entirety of his incarceration at the jail, with the exception of seven (7) days, in which the Plaintiff was confined in solitary confinement.

Cellblock D on the second floor was one of four (4) cellblocks on the second floor of the jail. The second floor cellblocks are identified as A block, B block, C block and D block of which eighty (80) and more inmates were confined. There was a total of only twenty two (22) commodes/toilets on the entire second floor cellblocks and eight (8) of which were constantly inoperatable and out of service.

Cellblock A had only one (1) shower for twenty two (22) and more inmates which were incarcerated therein. Cellblock B, C, and D were the same. The showers were extremely dirty and outright filthy. There was paint peeling off the walls inside the showers. The roof was mildewed inside the showers and the exhaust fan inside the shower was rusted out and completely clogged up with

4

dirt and filth.

There was no jailer or guard on duty in the cellblocks on the second floor. The only time a jailer/guard would come to the second floor cellblocks was when an inmate would kick on the door.

There were no operating lights in any of the cells on the second floor of the jail. The non-operatable lights that were in existance had no protective light covers on them for protection and to keep inmates from taking the bulbs out of them even though the lights didn't work.

There is no Tuberculosis testing, Hepatis, or AIDs testing and no full physical for people coming off the streets for confinement in the jail, thus there was a serious health risk for all inmates confined to the jail. There was no hospital facilities present in the jail and no nurse at all on duty. When a nurse was needed at the jail, jail personnel would call the hospital in town and have them send a nurse to the jail. There was a female at the jail who jailers claimed was a nurse-practioner who also happened to be a jailer.

A civilian female or jailer puts inmate meals in packs at the jail and a jailer passes them out, but it is inmates who have never been tested for contagious diseases who prepare the food. On Saturday and Sunday there is no civilian or jailer supervision for inmates preparing the food for the jail inmate population. The food for inmates at the jail consists of only two (2) cold

5

meals a day and a sandwich at lunch. Inmate food trays are placed on the tops of a cart, exposed to germs and filth as they are pushed all over the jail being passed out to inmates to eat. Inmates working the kitchen preparing food have no hair nets, and at times, no protective gloves. Even mothballs have been found in the food fed to inmates at the jail.

Plumbing access doors in the halls and cellblocks of the jail are loose, plumbing leaking in cellblocks A, B, C, and D, and where the shower leaks in B block, the water runs down into the kitchen where food is prepared.

Inmates go and come through the loose plumbing access doors at random and use the pipe chase to go downstairs to the female cellblock to have sex with them and the females do the same to come upstairs to have sex with the males.

The only recreation provided is when inmates are allowed outside for approximately 20 minutes once a week or once every two (2) weeks.

Due to lack of security in the cellblock areas, fights and assaults are common. Jailer Craig Davis simply gets all of the troublemakers and fighters and puts them in one cellblock.

There are no sheets provided or furnished to inmates at times for their mattress, no mattress covers and the mattresses are

6

filthy and not steralized, and inmates had to sleep on mattresses on the floor.

There was no grievance procedure and no disciplinary procedure in existance, practice, or operation at the jail.

There was no access to a law library for sentenced inmates.

Defendant Jeff Fuller never came over to the jail to check on it's condition or the condition of the inmates incarcerated therein and never fixed the problems and conditions of the jail. The Jail Administrator/Head Jailer, Shirley Johnson, does not come upstairs to check on inmates or see if inmates had any problems or the jail conditions.

The Plaintiff alleges that the totality of the conditions in existance at the jail violated his Eighth and Fourteenth Amendment rights, and the Defendant was and has been deliberately indifferent to and for the safety, health, and wellbeing of this Plaintiff and all other inmates confined within the Randolph County.

The Plaintiff alleges that at all times relevant to this complaint and the matters complained of herein, by virtue of statutes 11-14-1 through 11-14-24 the Defendants, Randolph County and the Randolph County Commissioners had a duty to keep the Randolph County Jail in good order and to repair the Randolph County Jail at the expense of the County. Said Defendants have a duty to erect a jail or jails in Randolph County, Alabama and levy a County tax for the erection and repair of the jail. The Chairman of the County Commission and the Randolph County Probate Judge are authorized and empowered to examine the jail once a week.

The Plaintiff alleges that Defendants, Randolph County, Alabama, the Chairman of the Randolph County Commission, the Randolph County Commissioners, and Randolph County Probate Judge, Mack Diamond were and have been deliberate indifferent to the health, safety, and wellbeing of the Plaintiff and all other persons confined to the Randolph County Jail and the Defendants violated this Plaintiff's Eighth and Fourteenth Amendment rights when:

The Plaintiff was placed in and confined to the Randolph County Jail on or about July 7th, 2005 and remained incarcerated therein until on or about October 6th, 2005 as a pretrial detainee. From on or about October 6th, 2005, the date the Plaintiff was sentenced to prison as a State Prisoner, the Plaintiff remained confined/incarcerated in the Randolph County Jail until January 20th, 2006 or about that date, when he was

8

transferred to the Kilby prison.

The Defendants have failed or refused to correct or remedy the terrible, unconstitutional conditions at the Randolph County Jail. The following conditions existed at the Randolph County Jail during the Plaintiff's incarceration therein.

There was only one (1) exhaust fan for the entire second floor of the jail which housed a minimum of eighty (80) inmates. The exhaust fan could not function properly because the guard on the fan was completely clogged up with black dust to the extent one could not even see through the guard, hence, there was no adequate ventalation on the second floor.

The jail was severly overcrowded. The cells were designed to hold six (6) inmates to a cellblock and there was, at times thirty six (6) inmates packed into the cellblock, no bed sheets at times for inmates, filthy mattresses with no mattress covers, the mattresses were extremely dirty and were not steralized, and inmates had to sleep on the mattresses on the floor. There was only six (6) commodes/toilets for what was usually 22 men to a cellblock and two (2) of these were constantly inoperatable. There was a total of only twenty two (22) commodes/toilets for the inmates incarcerated on the second floor of the jail and eight (8) of these were inoperatable. The showers were filthy with paint peeling off the walls inside the shower, and the roof of the shower was mildewed. The fan in the shower was clogged up with dirt and filth and rusted out.

9

There was no jailer or guard on duty in the cellblocks and the only time a jailer would come to the second floor was when an inmate would kick on the door. As a result of no security, there were fights and assaults in the cellblocks and after a fight or assault occurred in a cellblock, jailer Craig Davis would move them or him to another cellblock where he put all the troublemakers and fighters.

There were no lights in any of the cellblocks on the second floor that worked and the lights had no protective covers on them so that inmates could not remove the light bulbs, even though the lights did not work. The plumbing leaked and the leaking plumbing in B block leaked directly into the jail kitchen where food was prepared for inmates. The pipe chase doors were loose and open and male inmates would go through the pipe chase doors to go to the female cellblock and have sex with the females. The females would also use the pipe chase to come to the male cellblocks to have sex with the males.

There was no T.B., AIDS, ect testing or testing persons entering the jail off the streets for contagious or dangerous diseases and as a direct result, the sick and healthy inmates were all housed together and untested inmates worked in the kitchen preparing food for the inmate population. Inmates preparing food in the kitchen on Saturdays and Sundays without supervision. Inmates confined to the jail were served two (2) cold meals a day and a sandwich at lunch. The food trays which were prepared in the kitchen for jail inmates

10

were placed on the top of a cart, once prepared, and pushed all over the filthy jail exposed to dirt and germs as they were being passed out to jail inmates. Inmates who prepared and distributed the food had no hair nets, and at times, no protective gloves. Mothballs were even found in the food.

There was no hospital facilities at the jail and no on duty nurse for treatment of sick and injured inmates. There was a jailer at the jail which jail personnel claimed was a nurse practitioner. If a real nurse was needed, in the opinion of jail personnel, a nurse had to be called from the hospital in town to come to the jail to examine the inmate.

Inmates were only allowed outside for recreation for approximately 20 minutes a week or every two (2) weeks.

There was no access to a law library for sentenced inmates

There were open, exposed electrical boxes in the jail and cell block areas.

The totality of conditions at the Randolph County Jail violated this Plaintiff's Eight and Fourteenth Amendment rights and by keeping the Plaintiff incarcerated at the Randolph County Jail subjected to such conditions establishes the deliberate indifference of the Defendants for the health, safety and wellbeing of the Plaintiff and all other inmates incarcerated in the Randolph County Jail.

11

The Defendant Shirley Johnson is the Jail Administrator and/or Chief Jailer of the Randolph County Jail and was in such capacity during all times relevant to this complaint. By virtue of statute 14-6-1 Ala. Code, 1975 said Defendant was appointed or hired by Defendant Jeff Fuller to act and serve in such capacity. In such capacity, Defendant Shirley Johnson had the legal custody and charge of the jail and all prisoners committed thereto, including this Plaintiff.

The Plaintiff alleges that Defendant Shirley Johnson was deliberately indifferent to the health, safety and wellbeing of the Plaintiff and all other persons confined to the Randolph County Jail and Defendant Shirley Johnson violated this Plaintiff's Eighth and Fourteenth Amendment rights, when:

The Plaintiff was placed in and confined to the Randolph County Jail on or about July 7th, 2005 and remained therein as a pretrial detainee until on or about October 6th, 2005, the date the Plaintiff was sentenced to prison. From on or about October 6th, 2005 through January 20th, 2006, or about that date in January 2006 the Plaintiff was confined to the Randolph County Jail as a state prisoner.

During the Plaintiff's incarceration in the Randolph County Jail:

The second floor of the jail had only one (1) exhaust fan for the entire second floor on which cells were located containing prisoners. The exhaust fan had a guard on it which had

12

so much dirt, filth and black dust clogged up on the guard on it that one could not even see through it causing it not to function properly and thus no proper and adequate ventilation in the jail on the second floor.

The cellblocks were designed to hold six (6) inmates in each of the cellblocks identified as cellblock A, B, C, and D on the second floor of the jail, but the Defendant caused or allowed twenty two (22) inmates to be constantly housed in each of these cellblocks which was designed for only six (6) men, and she has caused or allowed as many as thirty six (36) inmates to be packed into this small cellblock, with only one (1) shower and six (6) toilets/commodes, two (2) of which were constantly inoperatable. The Defendant allowed or caused eighty (80) and more inmates at times to be confined to cellblocks A, B, C, and D on the second floor of the jail which was designed to hold twenty four (24) inmates. There was only twenty two (22) toilets/commodes on the second floor cellblocks for inmate use and eight (8) of these were constantly inoperatable. The showers were filthy with paint peeling off the walls, the roof mildewed and the exhaust fan in the showers were clogged up with dirt and filth and rusted out.

The Defendant failed or refused to provide adequate security in that she failed to have a jailer or guard constantly on duty to monitor the inmates and provide security and control. As a direct result thereof, there were fights among inmates and inmates assaulting each other. The only time a jailer

13

or guard would come to the second floor cellblocks was when an inmate would kick on the door of the cellblock.

Due to the deliberate Indifference of the Defendant:

There was no T.B. AIDS testing for persons coming off the streets for confinement in the jail, and no testing of incoming inmates for contagious and transmittable diseases. As a direct result thereof sick and/or diseased inmates were housed with healthy inmates and untested inmates were allowed to work in the kitchen preparing and distributing food to other inmates. There was no hospital/infirmary at the jail, no doctor and no registered nurse on duty. When a nurse was needed, in the opinion of a jailer, one had to be called from the local hospital in town.

The Defendant allowed or caused inmates to work the kitchen preparing food for the jail inmate population unsupervised on Saturday and Sundays with no jailer or guard on duty with them in the kitchen.

The Defendant allowed or caused jail inmates to be fed only two (2) cold meals a day and a sandwich at lunch. Inmate food was loaded onto the top of a cart, exposed to dirt, dust, filth and germs and pushed all over the jail as the food was being distributed to jail inmates. The inmates preparing and distributing the food had no hair nets, and at times no protective gloves. As a direct

14

of inmates preparing food, mothballs found their way into inmate food.

There were no bed sheets provided to inmates at times, there was no mattress cover for the filthy mattresses, the mattresses were absolutely filthy and had not been steralized and inmates were forced to sleep on the floor on the filthy mattresses. The plumbing leaked, and the shower in B blocked leaked and leaked into the kitchen where inmate food was prepared. Pipe chase doors were loose and open and male and female inmates would use the pipe chase to travel to and from cellblocks to engauge in sex. Electrical boxes were open and exposed, there were no operational lights in the cellblocks on the second floor, the lights had no covers or protective guards on them to keep inmates from removing the bulbs, even if the lights were operational. The only recreation provided for inmates was twenty (20) minutes a week or every two (2) weeks. And, there was no access to a law library for sentenced inmates. The Defendant would not come up to the second floor to check on inmates and the condition of the cells and inmates or to check properly for security.

The Plaintiff alleges that the Defendant was deliberately indifferent to the health, safety and wellbeing of this Plaintiff and other inmates confined to the jail and the totality of the conditions violated this Plaintiff's Eighth and Fourteenth Amendment rights.

## RELIEF REQUESTED

Wherefore, the Plaintiff prays that this Court will grant to the Plaintiff the following relief.

1. Award to the Plaintiff one hundred thousand dollars in compensatory damages from each defendant.

2. Award to the Plaintiff one hundred thousand dollars in punitive damages from each defendant.

3. Issue a declaratory judgement stating that the matters complained of violate the Eighth Amendment.

4. Issue an injunction enjoining the Defendants from incarcerating this Plaintiff or any other persons/citizens in the Randolph County Jail from the date of this Court's order forward until the matters complained of and the unconstitutional conditions are remedied, or a new jail is built.

5. Issue an injunction enjoining the Defendants, their agents or employees from retaliating against this Plaintiff in any manner whatsoever for the filing of this lawsuit.

6. Grant to the Plaintiff any such other and further relief as this Court may deem just and proper.

### AFFIRMATION OF OATH

I, Roscoe Lewis Holloway hereby swear and affirm under the penalty of perjury this the ___5___ day of May, 2006

16

that the facts and allegations contained within this civil action complaint are true and correct to the best of my knowledge and belief.

Done this the  5  day of May, 2006

Respectfully submitted,

Roscoe Holloway

Roscoe Lewis Holloway - Plaintiff Pro Se
AIS # 154358 - Dorm # 8
LCF - 28779 Nick Davis Road
Harvest, Alabama 35749-7009

## CERTIFICATE OF SERVICE

I hereby certify that I have on this the  5  day of May, 2006 served a copy of the foregoing amended civil action complaint upon:

The Clerk of the U.S. District Court
For the Middle District of Alabama
P.O. Box 711
Montgomery, Alabama 36101-0711

by placing copies of the same in the U.S. Mail properly addressed, postage prepaid at the Limestone Correctional Facility in Harvest, Alabama.

Respectfully submitted,

Roscoe Holloway

Roscoe Lewis Holloway
Plaintiff Pro Se

17